**WSM, INC., Plaintiff-Appellee,**

v.

**WHEELER MEDIA SERVICES, INC., Nashville Network, Inc., and Ian Wheeler, Defendants-Appellants.**

No. 85–5149.

United States Court of Appeals, Sixth Circuit.

Argued May 8, 1986.

Decided Jan. 29, 1987.

Rehearing Denied March 6, 1987.

Gregory A. Keyser (argued), Frost and Jacobs, Middletown, Ohio, for defendants-appellants.

L. Lawton Rogers, III (argued), Alexandria, Va., Francis M. Wentworth, Jr., Nashville, Tenn., for plaintiff-appellee.

Before ENGEL and RYAN, Circuit Judges, and CONTIE,* Senior Circuit Judge.

ENGEL, Circuit Judge.

Defendants appeal an order of the United States District Court for the Middle District of Tennessee awarding plaintiff $35,785.79 in attorney fees under the "exceptional cases" provision of section 35 of the Lanham Act, 15 U.S.C. § 1117(a).[1] The district judge held that plaintiff was entitled to the fees because defendants unnecessarily prolonged the litigation after September 27, 1982. We reverse.

The underlying controversy concerned the right to use the service mark "The Nashville Network." The defendants reserved the corporate name "Nashville Network, Inc." with the Tennessee Secretary of State in October 1980, and incorporated the "Nashville Network, Inc." under that name in September 1981. The defendants also registered the trademark with the Secretary of State in September 1981. However, the defendants never used the mark in the sense of having provided services under the mark, a circumstance which was later to be their undoing. Plaintiff, which is part of Opry Land, Inc., an entertainment corporation that owns the Grand Ole'

---

* Honorable Leroy J. Contie took senior status on July 1, 1986.

1. This section provides in full:

**Recovery for violation of rights; profits, damages and costs; attorney fees**

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117.

Opry, claimed that it owned the mark and that defendants were liable for infringement and unfair competition.

In a Memorandum filed October 3, 1983 the district judge found that plaintiff was the owner of the mark in dispute and on this basis granted plaintiff partial summary judgment. The judge noted that while plaintiff also claimed infringement and unfair competition by defendants, those claims were not before the court at that time. The court later granted plaintiff summary judgment on those claims in a Memorandum filed May 29, 1984. At the same time, the district court denied plaintiff's request for attorney fees:

> WSM also seeks an award of attorney fees from the point in time when the defendants knew that they did not own the mark. WSM contends that this point in time is September 17, 1982, when defendants were apprised that the character of their use as set out in defendants' depositions would not, as a matter of law support defendants' claim of ownership. This Court does not agree. Given the admissions of the defendants and the undisputed evidence on the issue of likelihood of confusion, this Court initially favored the imposition of attorney fees on the defendants. Nevertheless, the plaintiff's concession that the defendants' selection of the mark was without knowledge of WSM's use convinces this Court that the defendants' acts of infringement were not malicious, fraudulent, deliberate or willful so as to make this an exceptional case to justify requiring the defendants to bear the plaintiff's attorney fees. 15 U.S.C. § 1117.

Plaintiff moved for reconsideration of the denial of attorney fees, and on June 27, 1984 the court decided to grant plaintiff the fees it had incurred after September 17, 1982.[2] The court stated:

> The Court awarded defendants' profits to WSM. The Court declined to exercise its discretion to declare the case an exceptional one under 15 U.S.C. § 1117 because of the innocent adoption of the term by the defendants.

WSM now moves for reconsideration and for further monetary award equal to WSM's attorney fees after September 17, 1982 for the award of defendants' profits. The court deems the plaintiff's motion unopposed due to the defendants' failure to respond. Local Rule 8(b)(3).

WSM contends that defendants' innocent adoption should be a shield against an award of attorney fees *only* until such time as that innocence was dissipated. There can be no doubt that by September 17, 1982, defendants knew the ultimate outcome of the case. Defendants had admitted that WSM had used the mark; had admitted that defendants had not used the mark; had asserted a likelihood of confusion; and had been fully apprised of the law.

On January 18, 1985 the court set the fees[3] and stated that they were incurred after September 27, 1982. September 17, 1982 was the date of a letter from plaintiff to defendants in which plaintiff offered to settle the litigation. Plaintiff proposed foregoing any claims for damages or attorney fees if defendants would abandon their claim of rights to the disputed mark by September 27, 1982. This letter was apparently the basis for the district court's grant

**2.** Plaintiff filed its motion for reconsideration on June 15, 1984. Since plaintiff filed the motion more than ten days after the May 29 order, defendants argue that Federal Rule of Civil Procedure 59(e) deprived the district court of jurisdiction to consider the motion. This argument must be rejected because Rule 59(e) concerns only final judgments. The May 29 order was not a final judgment because it stated that plaintiff was still to be awarded damages based on defendants' profits.

**3.** January 18, 1985 was the date from which the time to appeal started to run rather than June 27, 1984, when the court stated, without setting the attorney fees, that plaintiff was entitled to them. *See Morgan v. Union Metal Manufacturing,* 757 F.2d 792 (6th Cir.1985). The thirty-day filing period was extended by one day in this case because of a Monday holiday for Washington's birthday. Defendants' notice of appeal, filed February 19, 1985, was thus timely, and we have jurisdiction over the appeal.

of attorney fees. The seeming discrepancy between the court's first order setting September 17 as the date on which defendant should have stopped litigating, and the second order setting September 27 as the date is undoubtedly related to the fact that plaintiff's September 17 letter gave defendant 10 days in which to desist.

■ First, we reject appellant's argument that section 1117 only authorizes an award of attorney fees in cases involving registered trademarks. Without deciding whether this case might in any event involve a registered trademark since plaintiff brought suit upon that theory originally, we believe, with the Eleventh Circuit in *Rickard v. Auto Publisher, Inc.,* 735 F.2d 450 (11th Cir.1984), that all of the section 1117 remedies, including attorney's fees, apply to actions brought pursuant to 1125(a).

The district judge applied two different standards in deciding the attorney fees question. In his May 29, 1984 Memorandum he asked whether defendants' use was "malicious, fraudulent, deliberate or willful," but in his June 27, 1984 Memorandum he applied a more lenient standard. This inconsistency is understandable in light of the uncertainty in the law governing attorney fees in trademark cases.

Conflicting views on the proper standard in these cases are presented in *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 771 F.2d 521 (D.C.Cir.1985). A majority held that the enactment of section 1117 by Congress indicated a desire to allow attorney fees to be recovered by prevailing parties in "exceptional" circumstances and that such exceptional circumstances were not limited by those in which a party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 526 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)). Observing that this traditional "bad faith" exception to the American rule already allowed awards of attorney fees, the majority concluded: "Something less than 'bad faith,' we believe, suffices to

mark a case as 'exceptional.' ... [W]e think 'exceptional,' as Congress used the word in section 35 of the Lanham Act, is most reasonably read to mean what the word is generally understood to indicate— uncommon, not run-of-the-mine." *Id.*

The dissent expressed the opinion that Congress enacted section 1117 because it was dissatisfied with the decision of the Supreme Court in *Fleischmann Distilling Co. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Since that decision placed in doubt whether the traditional bad faith exception to the American rule was available under the Lanham Act, the dissent reasoned that the Congress intended only to reaffirm the bad faith exception to the American rule. In reviewing other cases that had dealt with the "exceptional case" rule, the dissent observed:

These cases do not support an award of attorneys' fees merely upon a showing of innocent or careless judgment. Fairly read, they permit fee awards only if a litigant acts in bad faith or asserts claims so frivolous that the litigant could not have had a bona fide belief in their merit.

*Noxell,* 771 F.2d at 532 (footnote omitted).

■ We need not decide which of the two views in *Noxell* is to be preferred for we conclude that the circumstances here were not exceptional under either view. The district judge's original opinion expressly found that the defendants' conduct was not "malicious, fraudulent, deliberate or willful" even if one assumes that standard for an exceptional case under 15 U.S.C. § 1117. We agree with this view of the facts in the record and do not read the trial judge's later determination to be a departure from that view.

Even applying the more lenient test of the majority in *Noxell,* we believe that test has not been met and that therefore it was an abuse of discretion to allow attorney fees under that or any other available standard. We conclude that there was justification for defendants to continue litigation after September 1982. First, at that time plaintiff's ownership of the mark was still

in question. As the district court stated in its Memorandum of October 3, 1983, under section 35 of the Lanham Act ownership of a mark is established "when it is '(a) on goods . . . *and* (b) on services when it is used or displayed in the sale or advertising of services *and* the services are rendered in commerce.'" App. 296 (quoting 15 U.S.C. § 1127) (emphasis in Memorandum).

The great bulk of evidence which sought to establish the plaintiff's use was forthcoming only after September 1982. At the earliest, plaintiff affirmatively proved its own prior use of the trademark on October 28, 1982 in an affidavit in support of its motion for summary judgment on the issue of ownership. The affidavit stated:

> WSM has produced hundreds of hours of television entertainment programming; has executed hundreds of contracts with artists, writers and various other independent entertainment production personnel; has solicited and contracted with cable system operators; and has provided its services and facilities for the production of television shows which have been broadcast nationwide; all using the mark, THE NASHVILLE NETWORK.

All but one of the exhibits attached to the affidavit were advertisements of plaintiff's services or announcements of plaintiff's plan to start broadcasting a cable television network under the trademark in the future, but they contained no evidence of services rendered. One of the exhibits, however, was a newspaper article announcing that a show would be taped the following week "at the Nashville Network television studio" and that the show would "air on the Nashville Network." Although it can be argued that this announcement of the prospective taping was evidence of services rendered, the district court did not rely on it in finding that plaintiff owned the trademark. Rather, the court relied on evidence that the plaintiff filed on February 25, 1983. The September 17, 1982 letter, which the district court apparently thought apprised defendants of the futility of litigation, did not assert that plaintiff had used the mark. Rather, the letter merely assert-

ed that the defendants had not used it. This does not establish ownership.

Another indication that defendants' continuation of litigation was reasonable is that nearly six months after September 1982 the district judge was still seriously uncertain of his jurisdiction. In an order of March 14, 1983 he noted:

> Although both parties agree that the sole issue presented in the above-styled case is the ownership of the service mark The Nashville Network, the Court *sua sponte* raises the issue of whether this Court has jurisidiction under either 28 U.S.C. § 1332 or § 1338. Both parties should be cognizant of the general rule that in a trademark infringement action a federal district court has jurisdiction over an action arising under the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. § 1338, only if the plaintiff has a registered mark. . . . Absent federal registration, jurisdiction of this Court over common law trademarks or other trademarks not registered exist [sic] only if there is a complete diversity of citizenship even if in determining common law rights the court refers to the federal statute.

The court thereupon ordered the exchange of briefs covering this subject. In his October 3, 1983 Memorandum the district judge concluded that he had jurisdiction, but he laid the blame for his original uncertainty upon the plaintiff:

> the jurisdictional basis for this action has been unnecessarily encumbered due to the plaintiff's over-simplification of the issues presented in this case. The plaintiff contends that because there are no issues of confusion this Court can enter final judgment in favor of either party by determining the question of ownership of the mark THE NASHVILLE NETWORK. Initially assuming this to be true, this Court like the Court in *Rare Earth, Inc. v. Hoorelbeke*, 401 F.Supp. 26, 37 n. 20 (S.D.N.Y.1975), "entertained lingering doubts" about its subject matter jurisdiction to dispose of this case on the single issue of ownership without any determination of the trademark in-

fringement and unfair competition claims. These doubts existed because of the generally accepted rule that a federal court lacks jurisdiction to make a declaration of ownership of a common law trademark absent federal registration of the mark or diversity of citizenship between the parties....

In addition to the two specific issues that were unclear as of September 1982, we observe that the record as a whole does not indicate that the litigation in the district court was uncommon or exceptional or that the defendants' ultimate defeat was clearer than in most trademark cases.

Accordingly, the judgment of the district court from which appeal is taken is REVERSED and the case REMANDED for further proceedings consistent with this opinion.