NUPULSE, INC., Plaintiff–Appellant,

v.

The SCHLUETER COMPANY, Bradley Losching, and Bernard A. Losching, Defendants–Appellees.

No. 87–2702.

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1988.

Decided July 28, 1988.

Walter Kuhlmann, Boardman, Suhr, Curry & Field, Madison, Wis., for plaintiff-appellant.

Richard E. Rosenberg, Nowlan & Mouat, Janesville, Wis., for defendants-appellees.

Before BAUER, Chief Judge, and CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The appellant NuPulse, Inc. (NuPulse) prevailed on the merits after a bench trial in an unfair competition suit against The Schlueter Company (Schlueter) and two of its officers. The district court, however, rejected NuPulse's petition for attorneys' fees on the ground that attorneys' fees are not available in actions brought under section 43 of the Lanham Act, 15 U.S.C. § 1125. Schlueter has not appealed from the judgment against it on the merits, but NuPulse appeals from the denial of its petition for attorneys' fees. For the reasons set forth in this opinion, we reverse the judgment of the district court with respect to NuPulse's request for attorneys' fees, and we remand the case for further proceedings.

## I

### Facts

NuPulse has held the exclusive distribution rights for NuPulse milking equipment in the United States and Canada since October 1, 1985. NuPulse acquired those rights from Alfa–Laval New Zealand, Ltd. (Alfa), the owner of the NuPulse trademark and manufacturer of NuPulse equipment. Schlueter sells dairy farm equipment throughout North America. The district court found that Schlueter had purchased NuPulse parts in New Zealand and had combined them with other substituted parts. Schlueter then sold milking units which it verbally identified as "NuPulse" to dairy equipment dealers in North America. Schlueter advised its customers that its milking units were NuPulse units and would function like milking units sold by NuPulse. The district court also found that Schlueter's milking units did not function as well as NuPulse milking units, and that dairy farmers and dealers would be confused by Schlueter's representations. The court concluded that these actions constituted false representations in violation of section 43(a) of the Lanham Act.

The district court concluded that the facts of this case constituted an "exceptional case" within the meaning of that phrase in the Act. The court found that Schlueter's conduct was intentional, and that its actions harmed NuPulse's reputation and ability to maintain customer satisfaction. The court determined that Schlueter intended to interfere with NuPulse's relationship with Alfa, and that Schlueter intended to drive NuPulse out of business. In addition, the court found that the testimony of Schlueter's representatives had been inconsistent.

Although the court found that this was an "exceptional case," the court refused to grant attorneys' fees to NuPulse. Section 35 of the Lanham Act, 15 U.S.C. § 1117,

authorizes an award of attorneys' fees in "exceptional cases." The court acknowledged that at least three courts of appeals had concluded that the attorneys' fees remedy in section 35 was available in section 43 cases. Regardless, the court said that section 35 was not ambiguous and that its plain language allowed attorneys' fees only in cases involving infringement of registered trademarks. The court therefore concluded that "without clearer evidence of Congressional intent the gaps left in the Lanham Act should not be filled by the courts." *NuPulse, Inc. v. The Schlueter Co.,* No. 86–C–607–S, order at 5 (W.D.Wis. Sept. 18, 1987).

## II

## Discussion

The issue presented in this appeal is straightforward: whether the attorneys' fees remedy in section 35 of the Lanham Act should also encompass actions brought under section 43 of the Act. Before deciding this issue, we first address Schlueter's contention that the district court erroneously decided that this was an "exceptional case." If this was not an "exceptional case," then we have no occasion to reach the issue of statutory construction.

## A. *Exceptional Case*

An "exceptional case" is one in which the acts of infringement can be characterized as "malicious, fraudulent, deliberate, or willful." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 746 (7th Cir.1985); *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 828 (7th Cir.1984). In this case, the district court heard the evidence, saw the witnesses, and appraised their motives. Based on its personal observations, the court found that Schlueter's conduct was "certainly intentional" and designed to reduce NuPulse's sales. The court also found that Schlueter "intended to put the plaintiff out of business," that Schlueter intended to interfere with NuPulse's contract with Alfa, and that Schlueter's representatives had testified inconsistently. Schlueter has not identified any evidence to suggest that these findings

were erroneous. We cannot overturn the district court's decision that this case was "exceptional."

## B. *Statutory Construction*

### 1.

Having concluded that this case was properly designated "exceptional," we now examine whether the attorneys' fees provision in section 35 is available in cases brought under section 43. Section 35 of the Lanham Act provides:

> *When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled,* subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. *The court in exceptional cases may award reasonable attorney fees to the prevailing party.*

15 U.S.C. § 1117(a) (emphasis supplied). Section 43 of the Lanham Act, in pertinent part, provides:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or

containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a).

Whether the attorneys' fees remedy in section 35 is available in actions under section 43 is a question that has been addressed squarely by six other courts of appeals. All have concluded that the attorneys' fees remedy in section 35 is available in section 43 cases.[1] *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 528 (10th Cir.1987); *Centaur Communications v. A/S/M Communications*, 830 F.2d 1217, 1229 (2d Cir.1987); *WSM, Inc. v. Wheeler Media Servs.*, 810 F.2d 113, 116 (6th Cir. 1987); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1026 (9th Cir. 1985); *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 453–58 (11th Cir.1984); *Metric & Multistandard Components Corp. v. Metric's Inc.*, 635 F.2d 710, 715 (8th Cir.1980); *see also Reader's Digest Ass'n v. Conservative Digest, Inc.*, 821 F.2d 800, 807–09 (D.C.Cir.1987) (applying section 35 remedies in a section 43 case without express discussion). This circuit has never addressed directly the question. In *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 612 (7th Cir.1986), a panel suggested that the issue is more problematic than the foregoing precedent might suggest. While not deciding the issue, the

panel noted that the language of section 35 appears to apply only to registered trademark cases, while section 43 broadly applies to trademark and unfair competition cases. This concern about the scope of section 35 led the district court to conclude that the attorneys' fees remedy of section 35 was not applicable to cases under section 43. We also note that several other circuits have found the matter troubling. In *Brunswick Corp.*, the Tenth Circuit, while adopting the majority rule, said, referring to the other circuits' opinions:

> Although these decisions completely ignore strict construction of the Lanham Act and are a wholesale judicial creation of remedies that Congress has not expressly provided for, we are not inclined to create a split in the circuit courts, and thus conclude that section 35 remedies apply to section 43(a) provisions.

832 F.2d at 528. An equally doubting tone was expressed in *Standard Terry Mills, Inc. v. Shen Manufacturing Co.*, 803 F.2d 778 (3d Cir.1986), where the court said that "we have doubts whether we should rectify Congress's oversight and hold that attorney's fees are available in this case." *Id.* at 782.

### 2.

■ In questions of statutory construction our analysis begins with the language of the statute. As a general rule, when statutory language is plain, there is no cause to examine other indicia of legislative intent. *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 835 F.2d 1207, 1210 (7th Cir.1987); *see also Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 270 (7th Cir.1986). When section 35 is read in isolation, the plain wording of the statute appears to limit the scope of the provision to violations of a registered trademark. "Yet plain meaning, like beauty, is sometimes in the eye of the beholder." *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 737, 105 S.Ct. 1598, 1603, 84 L.Ed.2d 643 (1985). Here, we believe that several con-

---

**1.** Although all of these cases involved unregistered trademarks, none of them relied in any way on that factor as a basis for decision.

siderations require that we go beyond the plain wording of this single section of the statute to ensure that the true congressional intent is identified and given effect. First, we must remember that " '[t]he true meaning of a single section of a statute ..., however precise its language, cannot be ascertained if it be considered apart from related sections....' " *Commissioner v. Engle*, 464 U.S. 206, 223, 104 S.Ct. 597, 607, 78 L.Ed.2d 420 (1984) (quoting *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 126, 55 S.Ct. 60, 62, 79 L.Ed.2d 232 (1934)); *see also Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act...."). More recently, the Supreme Court has reaffirmed that "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, — U.S. —, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). This court has said that " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provision of the whole law, and to its object and policy.' " *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1220 (7th Cir.1982) (quoting *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849)). We also have noted that "the Supreme Court has recognized limitations on the requirement that statutory language be interpreted literally. A literal construction is inappropriate if it would lead to absurd results or would thwart the obvious purposes of the statute." *Smith v. Bowen*, 815 F.2d 1152, 1154 (7th Cir.1987) (citing *In re Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978)).

When we view the Lanham Act in its totality, it is clear that Congress intended to create a self-contained statutory device to deal with all kinds of trademark infringement and unfair competition. Section 45 of the Act, 15 U.S.C. § 1127, expressly provides:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127. This language strongly suggests that Congress did not intend to delegate unfair competition cases to a lower rung of importance than registered trademark cases.[2] Despite this clear emphasis on evenhanded treatment of trademark and unfair competition cases, section 43, unlike section 35, does not set forth the available remedies. It is therefore unclear on the face of the statute, when read as a whole, whether, in deciding a section 43 case, a court should be guided by the remedies contained in section 35 or by common law remedies.

Another consideration warrants our going beyond the plain wording of the statutory section. As the Eleventh Circuit noted in *Rickard v. Auto Publisher, Inc.*, "[o]ne reliable indicium of the clarity of Congress' language is consistent judicial interpretation of the provision in question." 735 F.2d 450, 455 (11th Cir.1984) (footnote

---

**2.** In passing, we note that the legislative history articulates the same intention. For example, the Senate Report regarding the Act states:

> [T]here is no essential difference between trade-mark infringement and what is loosely called unfair competition. Unfair competi-

tion is the genus of which trade-mark infringement is one of the species.... All trade-mark cases are cases of unfair competition and involve the same legal wrong.

S.Rep. No. 1333, 79th Cong., 2d Sess., *reprinted in* 1946 *U.S.Code Cong.Serv.* 1274, 1275.

omitted). The judicial interpretations—and judicial doubts—summarized in the foregoing paragraphs provide an additional justification for going beyond the text of the single section in question. "Indeed, our failure to do so would merely perpetuate the confusion...." *Id.*

### 3.

■ Because we are confronted with this ambiguity concerning the remedies available under section 43, we must resort to the legislative history of the Lanham Act. Our task remains constant—to ascertain the will of Congress and to apply it. As we have already noted, it was manifestly the intention of Congress that the Lanham Act be a self-contained statute. Congress viewed unfair competition cases as an integral component of that Act. A strong argument thus can be made that we should follow those circuits that have concluded that all the remedies under section 35 should be available to section 43 claims. *See Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 528 (10th Cir.1987); *Centaur Communications v. A/S/M Communications*, 830 F.2d 1217, 1229 (2d Cir.1987); *WSM, Inc. v. Wheeler Media Servs.*, 810 F.2d 113, 116 (6th Cir.1987); *U–Haul Int'l v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir.1986); *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 453–58 (11th Cir.1984); *Metric & Multistandard Components Corp. v. Metric's Inc.*, 635 F.2d 710, 715 (8th Cir.1980). However, we need not decide that broader issue because the legislative history of the 1974 amendment to section 35 that enacted the attorneys' fees remedy leaves no doubt that Congress intended for attorneys' fees to be available in section 43 actions. The Senate report speaks directly to the issue:

> Prior to 1967, the courts in trademark infringement and *unfair competition cases* had developed an equitable doctrine holding [that] attorney fees are recoverable by a successful plaintiff, notwithstanding the absence of express stat-

utory authority under the Lanham Act. This doctrine was overruled, however, by the Supreme Court decision in *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

> Trademark and *unfair competition cases* brought under the Trademark Act of 1946, however, *present a particularly compelling need for attorney fees*, which are denied under the *Fleischmann* doctrine. Mass demand, mass advertising and the increasingly large variety of goods available make the trademarks of crucial importance to manufacturers, distributors and the consuming public. These facts of modern business life also make trademark infringement and acts of *unfair competition* particularly appealing to unethical competitors.... *It would be unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate, and willful.*

S.Rep. No. 1400, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S.Code Cong. & Admin. News* 7132, 7135–36 (emphasis supplied). In light of this passage, we conclude that the attorneys' fees provision of section 35 is applicable to actions brought under section 43.[3]

Our conclusion is, of course, reinforced by the fact that at least six other courts of appeals have reached the same result. We are not bound by those decisions and the parties before us certainly have the right to our independent judgment. However, it would take a persuasive showing to convince us to reject the weight of such a significant precedent. In *Colby v. J.C. Penney Co.*, 811 F.2d 1119 (7th Cir.1987), we noted a strong judicial interest in "maintaining a reasonable uniformity of federal law and in sparing the Supreme Court the burden of taking cases merely to resolve conflicts between circuits." *Id.* at 1123. Accordingly, we said that "we give

---

**3.** When this legislative history of the attorneys' fees provision is considered, the language of the amendment to section 35 takes on a new significance. The amendment permits attorneys' fees to "the prevailing party." By contrast, the rest of the language in the section, enacted at an earlier time, is cast in terms of the plaintiff in a registered trademark action.

most respectful consideration to the decisions of the other courts of appeals and follow them whenever we can." *Id.* In *Martin v. Heckler,* 773 F.2d 1145 (11th Cir.1985) (en banc), the court considered the scope of the attorneys' fees provision in the Equal Access to Justice Act. After noting unanimity among the other courts of appeals on the pertinent issue, the court said:

> [This] issue involves statutory interpretation. Fairness does not require one interpretation over the other. Nor is the matter so important to the administration of justice that one circuit is justified in insisting on its own way. To the extent judicial construction has missed the congressionally-intended mark, Congress can readily amend the statute's language to clarify its intent.

*Id.* at 1153. The same concerns are apposite here.

### Conclusion

We are persuaded that Congress intended that district courts have discretion to award attorneys' fees to prevailing parties in actions brought under section 43 of the Lanham Act. The decision of the district court is reversed, and the case is remanded for further proceedings.

REVERSED.