### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

### SEARS, ROEBUCK AND CO., Defendant.

No. 93 C 7132.

United States District Court, N.D. Illinois, Eastern Division.

July 7, 1994.

Sharon Ann Seeley, John C. Hendrickson, Laura Todd Johnson, Gregory M. Gochanour, E.E.O.C., Chicago, IL, for plaintiff.

Donald James Spero, Michael A. Stiegel, Paul Ely Starkman, Vito P. LoVerde, Arnstein & Lehr, Chicago, IL, for defendant.

Thomas William Osborne, American Ass'n of Retired Persons, Washington, DC, for American Ass'n of Retired Persons, amicus.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This case presents an interesting and rather challenging issue: whether an employer's termination program which conditions severance benefits on a waiver of an employee's

rights and claims that is not "knowing and voluntary" within the meaning of 29 U.S.C. § 626(f)(1) is unlawful and actionable under section 4 of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (1994). The issue is one of first impression. It has not been addressed, as far as we can tell, by any other court.[1]

The genesis of this case is an age discrimination charge filed with Plaintiff Equal Employment Opportunity Commission ("EEOC") by an employee of Defendant Sears, Roebuck and Company ("Sears") challenging the legality of Sears' "Big Ticket Severance Allowance Plan" (hereafter the "Plan") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* After the EEOC's conciliation efforts failed, the EEOC brought this suit against Sears.

The EEOC alleges that since February 14, 1992, Sears has engaged in an unlawful practice in violation of section 4(d) of the ADEA, 29 U.S.C. § 623(d), by willfully "conditioning employees' receipt of severance benefits on execution of a waiver and release of ADEA claims which is invalid under Section 7(f) of the ADEA ... and which requires employees to release all ADEA claims, including claims unrelated to the employee's termination." (Compl. ¶ 8.) The EEOC asks the Court, *inter alia,* to enjoin Sears from engaging in conduct that violates section 4(d), to order Sears to take certain remedial actions in connection with the challenged severance program, and to declare invalid employee waivers signed in connection with the challenged severance program.

The matter is presently before us on Defendant Sears' motion to dismiss the complaint. Sears challenges the sufficiency of the complaint on numerous grounds. To wit, they argue that: (1) the EEOC may not commence this action because it did not give the appropriate notice nor attempt conciliation as required by the ADEA; (2) the allegations in the complaint are conclusory and

deficient; (3) the complaint fails to state a claim under ADEA section 4(d) because the EEOC does not allege that Sears discriminated against anyone for opposing conduct unlawful under the ADEA; (4) the EEOC's claim that general releases are *per se* invalid contravenes the letter and spirit of the Older Workers' Benefit Protection Act as codified at 29 U.S.C. § 626(f)(1); (5) the EEOC and the Courts have consistently upheld the validity of general releases; (6) Sears' conduct is not actionable because Sears acted pursuant to a *bona fide* employee benefit plan; and (7) the EEOC's conduct violates principles of fundamental fairness and section 553 of the Administrative Procedures Act ("APA") because the EEOC is taking an interpretative position in this litigation different than that taken previously by the agency.

We have jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1343, and 1345. For the reasons set forth below, the motion to dismiss is granted.

### *Discussion*

■ At the outset, we feel compelled to express our agreement with Sears regarding the sufficiency of the complaint's factual allegations. The "meat" of the complaint, if one could call it that, is nothing more than a conclusory allegation that Sears engaged in unlawful conduct by conditioning certain severance benefits on an allegedly invalid release. The only factual information before the Court about the challenged severance program is contained in the EEOC's response in opposition to the motion to dismiss.

■ Even if we push the concept of notice pleading to its farthest extreme, the allegations in the complaint are insufficient. "Even the liberal notice pleading allowed by the federal rules requires the complaint to include the operative facts upon which a plaintiff bases his claim." *Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 198 (7th Cir.1985) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80

1. The importance—and perhaps novelty—of the issue is evidenced by the fact that two *amici curiae* have filed briefs with the Court in connection with the matter: the Equal Employment Advisory Council ("EEAC") in support of Defen-

dant Sears' motion to dismiss the complaint, and the American Association of Retired Persons ("AARP") in support of Plaintiff EEOC's motion in opposition.

(1957). The complaint contains none of the factual allegations that are required to support a claim under section 4(d). It also does not contain factual allegations supporting the EEOC's contention that the release is invalid.

■ The fact that the EEOC supplies what appear to be the operative facts in its Memorandum in Opposition to Defendant's Motion to Dismiss does not cure the problem. We consider only the allegations in the complaint on a Rule 12(b)(6) motion to dismiss. Allegations outside of the complaint are irrelevant to our analysis. *Rodgers,* 771 F.2d at 198.

This alone warrants dismissal of the complaint. Nonetheless, because this pleading deficiency can be cured by importing the factual allegations in the responsive brief into the complaint, judicial economy is best served if we consider whether the amended complaint would state a claim under section 4(d) of the ADEA. Because the foundation of the EEOC's claim is the invalidity of the release required under the Plan, we address first whether the release complies with the requirements of 29 U.S.C. § 626(f)(1).

In November 1991, Congress amended the ADEA by enacting the Older Workers Benefit Protection Act ("OWBPA"). Among other things, the Act sets forth statutory restrictions limiting the manner in which employees may waive their rights and claims under the ADEA. *See* 29 U.S.C. § 626(f). The OWBPA provides that an employee may not waive his or her ADEA rights and claims unless such waiver is "knowing and voluntary." 29 U.S.C. § 626(f)(1). A waiver granted in conjunction with an exit incentive or employment termination program is knowing and voluntary if, at a minimum,

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under [the ADEA];

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

. . . .

(F) . . . . (ii) . . . the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) . . . the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—

(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

(ii) the job title and ages of all individuals eligible for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1).

Sears argues that the Plan conforms to the requirements set out in section 623(f)(1) despite the fact that employees are given only five days in which to decide whether to participate in the Plan or remain employed by Sears at reduced compensation. Sears attempts to distinguish between an employee's "decision to resign" and an employee's "decision to waive ADEA claims." According to Sears' reading of the language of the ADEA, the statute's waiver provisions govern the terms of the latter not the former because the term "agreement" refers only to the terms of the agreed upon exchange of a waiver for severance benefits. Thus, while Sears must give an employee forty-five days to decide whether to accept the severance benefits and waive his or her ADEA rights

and claims or forego the benefits but retain those rights and claims, Sears may require the employee to decide whether he or she prefers to keep her job or resign in five days.

■ We do not agree. Sears' reading of the statute is neither consistent with the plain language of the statute nor consistent with Congress' intent in enacting the waiver provisions of the OWBPA. Despite Sears' argument to the contrary, we hold that the term "agreement" as used in section 626(f) refers to the agreement to participate in the Plan, not just to the subpart of that agreement addressing an employee's willingness to exchange ADEA rights and claims for additional severance benefits. The EEOC therefore may be able to prove that releases executed in conjunction with the Plan are not knowing and voluntary and thus are invalid under section 626(f)(1).

■ In construing statutory language, our task is to "determine the will of Congress and apply it." *Orrego v. 833 West Buena Joint Venture,* 943 F.2d 730, 734 (7th Cir. 1991). In determining Congressional intent, we look first to the language of the statute. *NuPulse, Inc. v. Schlueter Co.,* 853 F.2d 545, 548 (7th Cir.1988). If the statutory language is unambiguous, we generally need look no further. *Id.* (citing *Indiana Port Comm'n v. Bethlehem Steel Corp.,* 835 F.2d 1207, 1210 (7th Cir.1987)).

■ We do not, however, restrict our focus to the particular language at issue. Context is important in explaining the meaning of apparently intelligible terms. *Harco Holdings, Inc. v. United States,* 977 F.2d 1027, 1030 (7th Cir.1992) (citing *First Chicago Corp. v. Commissioner,* 842 F.2d 180, 183 (7th Cir.1988)). " ' "[T]he true meaning of a single section of a statute ..., however precise its language, cannot be ascertained if it be considered apart from related sections...." ' " *NuPulse,* 853 F.2d at 549 (quoting *Commissioner v. Engle,* 464 U.S. 206, 223, 104 S.Ct. 597, 607–08, 78 L.Ed.2d 420 (1984) (in turn quoting *Helvering v. Morgan's, Inc.,* 293 U.S. 121, 126, 55 S.Ct. 60, 62, 79 L.Ed. 232 (1934))). We must be guided by the object and policy of the statute rather than by the language of a particular sentence or part thereof. *Id.*

If a waiver is sought in conjunction with an exit incentive or employment termination program, "the individual [must be] given a period of at least 45 days within which to consider *the agreement*." 29 U.S.C. § 626(f)(1)(F)(ii) (emphasis added). Subsection (A) provides that the waiver must be "part of an agreement." 29 U.S.C. § 626(f)(1)(A). Subsection (B) provides that rights and claims must be waived "in exchange for consideration...." 29 U.S.C. § 626(f)(1)(B).

The language of section 626(f)(1)(A) tends to support a broad reading of the term "agreement." The waiver itself thus is only a part of the "agreement" which employees are entitled to consider for forty-five days. The language of subsection (A) does not shed any light, however, on whether the term "agreement" refers to something beyond the rights-for-benefits contract envisioned by subsection (B).

Subsection (H) does. Limiting the meaning of "agreement" to the meaning suggested by Sears would put subsection (F) at odds with the requirements imposed by subsection (H). Section 626(f)(1)(H) provides that

if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group of employees, the employer (at the commencement of the period specified in subparagraph (F)) [must inform] the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to

(i) any class, unit, or group of individuals covered by such program, and eligibility factors for such program, and any time limits applicable to such program; and

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1)(H). This information is the sort of information an employee would

need to assess whether the program discriminates against employees on the basis of age. The employee then would be able to determine whether he or she would be giving up potential ADEA claims or valuable ADEA rights in exchange for the proffered benefits. The employee would have the information necessary to make a "knowing" decision with regard to his or her rights.

It would make no sense at all for Congress to require an employer to supply this information but then allow the employer to render the information next to useless. Yet, under Sears' proposed reading, this would be the end result when employees are given a third option of remaining with the company. By distinguishing between the decision to resign and the decision to accept severance benefits and establishing different timetables for those decisions, the employer could force an employee to rule out one possible alternative (i.e., the option to remain with the company rather than resign) within less than forty-five days.

The problem is that the required information affects an employee's perception of the relative risks and rewards of *all* of the alternatives before him or her, not just the alternatives related to signing the requested release.[2] In order to make a reasoned decision, the employee would have to digest the disclosed information and come to a decision with regard to the value of his or her ADEA rights and claims within whatever time period the company set for the initial remain-resign decision, regardless of how short that period might be. This is not consistent with the intent evidenced by subsection (H).

Sears' interpretation is even less plausible when the statute is read as a whole. Section 623(f)(2) provides that actions taken in accordance with the terms of a bona fide employee benefit plan are protected only if the plan does not "require or permit the *involuntary* retirement" of any employee in the protected class. 29 U.S.C. § 623(f)(2) (emphasis added). The issue is whether the decision to participate *in the plan* is voluntary. *See, e.g., Paolillo v. Dresser Indus. Inc.,* 821 F.2d 81, 84 (2nd Cir.1987) (employees "must be given a reasonable time to reflect and to weigh their options in order to make a considered choice"). The focus is not simply on whether the release itself is valid and enforceable, but on whether the employee's decision to participate in the plan is voluntary.

The Seventh Circuit's discussion in *Henn v. National Geographic Soc'y* is particularly illuminating. The court noted that

[w]hat distinguishes early retirement from discharge is the power of the employee to choose to keep working. This must mean a 'voluntary' choice.... A very short period of time to make a complex choice may show that the person could not digest the information necessary to the decision. This would show that the offer of information was illusory and there was no informed choice.

819 F.2d 824, 828–29 (7th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). An employee faced with three alternatives has but one choice. As is apparent from sections 623(f)(2) and 626(f)(1), Congress intended that employees within the protected class be given the information and the time necessary to make a truly informed choice. We will not interpret "agreement" so narrowly that we defeat Congressional intent.[3]

---

2. This is true whether the decision tree facing the employee has two branches—i.e., resign, waive rights, get benefits; or resign, retain rights, forego benefits—or, as here, three—keep job, retain rights; resign, retain rights, forego benefits; or resign, waive rights, get benefits. A reasonable employee faced with the option of staying at her job at reduced pay would weigh the expected value of that option against the expected value of the other two options before making a choice.

3. Sears' statement that "'melding' the decision to resign with the later decision as to the release" would "invalidate all involuntary termi-

nation plans where the employees were slated for termination prior to being presented with a release," (Reply Mem. in Supp. of Mot. to Dismiss at 4 & n. 4), is meritless. An employee subject to an involuntary early termination plan has but two choices: waive his or her ADEA rights and claims and accept the concomitant severance benefits or retain his or her rights but lose out on the benefits. Our interpretation of the term "agreement" accommodates such situations. In such a case, the only provisions that would be contained in the agreement are those that pertain to the rights-for-benefits exchange.

Notwithstanding this conclusion, we are still left with the question of whether such a deficiency is actionable under the ADEA. The EEOC maintains that conditioning severance benefits on an invalid release is retaliation actionable under ADEA section 4(d). They cite four cases in support of their position: *EEOC v. Board of Governors of State Colleges and Univ.*, 957 F.2d 424 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 299, 121 L.Ed.2d 223 (1992); *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085 (5th Cir.1987); *EEOC v. General Motors Corp.*, 826 F.Supp. 1122 (N.D.Ill.1993); and *EEOC v. U.S. Steel Corp.*, 671 F.Supp. 351 (W.D.Pa. 1987), *rev'd on other grounds*, 921 F.2d 489 (3rd Cir.1990). Sears, citing this Court's decision in *Oberg v. Allied Van Lines, Inc.*, 1992 WL 186098 (N.D.Ill. July 24, 1992), aff'd, 11 F.3d 679 (7th Cir.1993), argues that the only effect of a faulty release is that the employer trades additional benefits for an unenforceable contract.

■ We conclude that conditioning severance benefits on an invalid release is not actionable under ADEA section 4(d). Nothing about an invalid release makes it discriminatory as that term is used in ADEA section 4(d). The cases cited by the EEOC in support of its position are distinguishable. Furthermore, nothing in the language of the ADEA or the OWBPA indicates that conditioning severance benefits on an agreement not to assert ADEA rights is *per se* unlawful under ADEA section 4(d), the EEOC's argument to the contrary notwithstanding.

The EEOC has not alleged, nor will they be able to prove, that Sears engaged in conduct actionable under section 4(d). To be entitled to relief under that section, the EEOC must show that Sears discriminated against an employee because he or she "*opposed any practice* made unlawful [under the ADEA], or ... *made a charge, testified, assisted, or participated in any manner in*

*an investigation, proceeding, or litigation* under [the ADEA]." 29 U.S.C. § 623(d) (emphasis added). Nowhere in the complaint—or in its responsive brief for that matter—does the EEOC allege that any employee opposed Sears' allegedly unlawful practice. Nor, for that matter, does the EEOC allege that Sears' denial of severance benefits was based on any employee's involvement in an ADEA investigation, proceeding or litigation.

At most, the EEOC will be able to prove that some Sears' employees refused to sign the allegedly invalid release and that Sears as a result refused to give them the additional severance benefits. This is not actionable discrimination because Sears' conduct was not precipitated by the type of affirmative conduct implied by the phrase "oppos[ing] an unlawful practice." "To oppose" means "to offer resistance to." *Webster's Ninth Collegiate Dictionary*, 828 (1986). Refusing to sign a release that would entitle one to benefits hardly constitutes offering resistance as that phrase is commonly understood.

The EEOC's contention that conditioning severance benefits on a waiver of ADEA rights and claims is generally unlawful under section 4(d) likewise is not supported by the plain language of that provision. The only discrimination proscribed by section 4(d) is discrimination based on an employee's opposition to unlawful conduct and discrimination based on an employee's involvement in an ADEA investigation, proceeding, or litigation. Discrimination on the basis of willingness to waive ADEA claims is simply not listed.

Three of the four cases cited by the EEOC do not support its position.[4] *EEOC v. Board of Governors of State Colleges and Univ.*, 957 F.2d 424 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 299, 121 L.Ed.2d 223 (1992), involved an EEOC challenge to a provision in

4. The fourth, *EEOC v. U.S. Steel Corp.*, 671 F.Supp. 351 (W.D.Pa.1987), *rev'd on other grounds*, 921 F.2d 489 (3rd Cir.1990) appears to hold that conditioning additional pension benefits on the waiver of the recipient's right to file an EEOC charge and an agreement not to "counsel or assist" in the prosecution of ADEA claims is unlawful under section 4(d). The case thus is distinguishable as the release here does not appear to contain such provisions.. The case may be read more broadly, however, to invalidate release provisions that *may* deter individuals from participating in ADEA claims. *Id.* at 358. To that extent, it appears inconsistent with the later-enacted provisions of the OWBPA. We therefore decline to adopt that court's reasoning.

a collective bargaining agreement. The agreement provided that:

'[i]f prior to filing a grievance hereunder, or while a grievance proceeding is in progress, an employee seeks resolution of the matter in any other forum, whether administrative or judicial, the Board of any University shall have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure.'

957 F.2d at 426 (quoting Article 17.2 of the Collective Bargaining Agreement). The Seventh Circuit reversed the district court's grant of summary judgment in favor of the Board's favor. The court found that "[u]nder Article 17.2 an employee must forfeit his contractual right to a grievance proceeding, a condition of his employment, or surrender his legal right to participate in litigation under the ADEA. Conversely, an employee who elects to pursue his grievance with the Board may lost his right to bring his federal age discrimination claim [e.g., because of the running of the statute of limitations]." *Id.* at 430–31.

Unlike the grievance procedure at issue in *Board of Governors,* the severance benefits offered under the Plan are not "part and parcel of the employment relationship." Employees' right to participate in the grievance procedure at issue in *Board of Governors* was contractual. There is no indication whatsoever that Sears' employees were entitled to the severance benefits offered under the Plan, contractually or otherwise. Rather, the benefits at issue here are properly viewed as additional consideration for an employee's agreement to waive his or her rights and claims.

That distinction is crucial. The keystone of the Seventh Circuit's decision in *Board of Governors* is the fact that the benefit forfeited was one to which the employee was already entitled. " 'A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free … not to

provide the benefit at all.' " *Id.* at 430 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 75, 104 S.Ct. 2229, 2233–34, 81 L.Ed.2d 59 (1984)).

*EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.,* 821 F.2d 1085 (5th Cir.1987), and *EEOC v. General Motors Corp.,* 826 F.Supp. 1122 (N.D.Ill.1993) likewise are of no help to the EEOC. As in *Board of Governors,* the challenged conduct was the denial of a benefit to which the employee was already entitled. In *Cosmair,* it was the suspension of an employee's severance pay when the employee filed a discrimination charge with the EEOC. 821 F.2d at 1087. In *General Motors Corp.,* it was the denial of use of GM's "open door" policy. 826 F.Supp. at 1126. Thus, these cases too are distinguishable on their facts.[5]

We hold, then, that Sears' conduct is not actionable under the ADEA's anti-discrimination provision. The EEOC is not entitled to relief under that section. The complaint as it stands must be dismissed.

We conclude, however, that the EEOC may be able to state a claim under 29 U.S.C. § 623(a)(1) and therefore dismiss the complaint without prejudice. Sears' policy of giving an employee five days in which to decide whether to resign or to remain employed at reduced compensation levels may discriminate against individuals in the protected class with respect to a privilege of employment, to wit, the right to choose to remain in Sears' employ. As noted above, an employee who is given only a short time in which to make a complex employment decision may have only an illusory right to choose. In such a case, the choice is not really voluntary. What appears to be voluntary early retirement is really an involuntary discharge. *Henn v. National Geographic Soc'y,* 819 F.2d at 828–29. It may be that five days is too short a time for employees protected by the ADEA to assess their potential ADEA claims and rights, weigh the value of those rights and claims against the

---

**5.** Although the Fifth Circuit decided *Cosmair* on other grounds, the court noted in *dicta* that an employer is guilty of retaliation "if [the employer] stopped providing [the employee] benefits *to which he was otherwise entitled* simply because

he filed a charge." 821 F.2d at 1089 (emphasis added). As in the Seventh Circuit, actionability turns on whether or not the employee is entitled to the benefits that have been denied.

alternatives, and arrive at a truly voluntary decision.[6]

### Conclusion

For the reasons stated above, Sears' motion to dismiss is granted. The EEOC's complaint is hereby dismissed without prejudice. The EEOC is granted twenty days within which to file an amended complaint consistent with our discussion herein. If an amended complaint is not filed within the designated time period, the dismissal shall be with prejudice.

---

**6.** The fact that Sears' policy may adversely affect those not in the ADEA-protected class is irrelevant. As the Seventh Circuit noted in *Board of Governors,*

[t]he contention that [a] policy is any less discriminatory when its scope is broadened is unpersuasive.... Were we to adopt the Board's argument that a policy imposing adverse treatment on all members of the protected class was rendered non-discriminatory by the inclusion of some members outside the protected class, employers could consistently employ discriminatory criteria as long as they were careful to draw their discriminatory lines broadly enough to include members of a non-protected class.

957 F.2d at 431.