1999 OK CIV APP 137

Clare A. MENDUS, Defendant/Cross–Plaintiff/Appellant,

v.

MORGAN & ASSOCIATES, P.C., an Oklahoma corporation and Lisa Gifford, Individually, Cross–Defendants/Appellees.

No. 92,418.

Court of Civil Appeals of Oklahoma, Division No. 4.

June 29, 1999.

Rehearing Denied Sept. 7, 1999.

William T. Brett, Brett & Kaestner, P.A., Oklahoma City, Oklahoma, for defendant/cross-plaintiff/appellant.

Lisa Gifford, Morgan & Associates, P.C., Oklahoma City, Oklahoma, for cross-defendants/appellees.

## OPINION

RAPP, J.

¶1 The trial court defendant/cross-plaintiff, Clare A. Mendus ("Mendus"), appeals an order granting summary judgment to the trial court cross-defendants, Morgan & Associates, P.C. and Lisa Gifford ("Morgan"). That order is final pursuant to 12 O.S.Supp. 1998, § 994(A).

## I. *Facts*

¶ 2 The facts are not in controversy. Credit Adjustment Co., Inc., as assignee, sued Mendus to collect a medical bill. Morgan & Associates is the law firm representing Credit Adjustment and Ms. Gifford is an attorney with that firm.

¶ 3 Mendus was served with a summons and entered an appearance. Thereafter, she defaulted but obtained permission to file her answer out of time. She then initiated the cross-action against Morgan claiming that each cross-defendant violated the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., ("Act"), because the 30–day notice provisions of the Act were presented to her in the summons which, under State law, provided only 20 days to respond, and resulted in a communication which was, at best, confusing to an unsophisticated consumer.[1] 12 O.S.1991, §§ 2012, 2027. Although the parties agreed that the wording of the 30–day notice as stated in the summons fully complied with the Act's requirements, nevertheless, there were deficiencies. 15 U.S.C. § 1692g.

¶ 4 Morgan's response to the petition-in-error suggests that an earlier 30–day notice was given in compliance with the Act by its client, Credit Adjustment.[2] However, the record neither mentions nor documents this event. Under the record presented, therefore, the only notification given under the Act was that contained in and made a part of the summons. Thus, under the record, the summons and petition constituted the first contact by Morgan with Mendus.

¶ 5 Mendus alleged that the summons 20–day answer time is unlawfully inconsistent with the 30–day notice provided by the Act. Mendus claimed that it is unlawful to contradict or overshadow the Act so as to confuse the least sophisticated debtor and she claimed both statutory and actual damages under the Act.[3] Both parties moved for summary judgment.

¶ 6 The issues, as framed by the summary judgment proceedings, are the following: (1) Is there a conflict between the Oklahoma Pleading Code and the Act; and, if so, (2) Does the Act pre-empt the Oklahoma Pleading Code ("Code") so as to remove the 20–day answer period when, as here, there has not been any prior notification under the Act and the first notice of the debtor's rights under the Act is given in the summons. The trial court, without specific findings or conclusions, ruled in favor of Morgan. Mendus appeals.

## II. *Standard of Review*

■■■ ¶ 7 The appellate standard of review in summary judgment is *de novo.* This means without deference. *Hulett v. First National Bank & Trust Company In Clinton,* 1998 OK 21, 956 P.2d 879; *see Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The pleadings and evidentiary materials will be examined to determine what facts are material and whether there is a substantial controversy as to one material fact. *Sperling v. Marler,* 1998 OK 81, 963 P.2d 577; *Malson v. Palmer Broadcasting Group,* 1997 OK 42, 936 P.2d 940. All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the nonmoving party. *Carmichael v. Beller,* 1996 OK 48, 914 P.2d 1051. Even though the facts may be uncontroverted if reasonable persons may draw different conclusions from these facts summary judgment must be denied. *Bird v. Coleman,* 1997 OK 44, 939 P.2d 1123. Summary judgment is proper only if the record reveals uncontroverted material facts failing to support any legitimate inference in favor of the nonmoving party. *N.C. Corff Partnership, Ltd. v. OXY, USA,* 1996 OK CIV APP 92, 929 P.2d 288. When

---

1. It is undisputed that the debt involves a consumer debt under the Act.

2. The initial contact by the client could have been a matter for Morgan to properly plead and prove as a defense. *See* 53 C.F.R. 50097, 50100–50101 Federal Trade Commission Commentary, ¶ 3, *Dispute and Verification (section 809).*

3. Mendus did not claim that the service of the summons somehow violated the limitations on debtor contact set forth in 15 U.S.C. § 1692c and any such issue is not now before this Court.

genuine issues of material fact exist summary judgment should be denied and the question becomes one for determination by the trier of fact. *Brown v. Oklahoma State Bank & Trust Co. of Vinita,* 1993 OK 117, 860 P.2d 230; *Flowers v. Stanley,* 1957 OK 237, 316 P.2d 840.

¶ 8 Similarly, the appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100, Fn. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

### III. *Analysis and Review*

### A. *The Existence of Conflict*

¶ 9 An affirmative answer must be given to the first question posed—Is there a conflict between the Code and the Act?

¶ 10 The Act's purpose is to eliminate abusive debt collection practices found by Congress to exist. 15 U.S.C. § 1692. The Act is a strict liability statute. *Cavallaro v. The Law Office of Shapiro & Kreisman,* 933 F.Supp. 1148 (E.D.N.Y.1996). The Act is applicable to attorneys regularly engaged in consumer debt-collection litigation on behalf of a creditor client. *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). Moreover, the Act applies to attorneys that regularly engage in consumer debt collection "even when the activity consists of litigation." 514 U.S. at 299, 115 S.Ct. 1489.[4] Here, the parties did not dispute that the Act applied to Morgan or that Mendus is a consumer debtor covered by the Act.[5]

### 1. *Communication Under The Act*

¶ 11 A sub-issue here to be first answered is whether a summons or pleading is a communication under the Act. This Court holds that the summons is a communication for the reasons set out below.

¶ 12 The Act to accomplish its purposes prescribes rules for creditors' relationships with covered debtors. The Act directs that, either at the time of "initial communication" with the consumer debtor or within five days thereafter, specific information must be provided. Among the items included in the body of information are notices to the debtor advising that the debtor may challenge the debt validity within 30 days or demand the name and address of the original creditor if it is, as here, different from the notifying creditor. In addition, if the debtor notifies the debt collector in writing of a dispute about the debt's validity, the debt collector must obtain and provide verification of the debt by mail. Moreover, when the debt's validity is disputed, the creditor must cease collection of the debt until such documentation is provided.[6] 15 U.S.C. § 1692g. Under the record presented, the petition and summons were the initial communication with Mendus.

¶ 13 The Act imposes conformity with its notification requirements "within five days after the initial communication with a consumer." The word "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

¶ 14 It is here noted that the Federal Trade Commission in 1989, published a non-binding "Commentary" which states in part:

1. Coverage (Sections 803(2, 5, 6), 811)

Attorneys or law firms that engage in traditional debt collection activities ... are

---

4. The Court specifically rejected the position that litigation activities were exempt premised upon arguments arising from legislative history and Federal Trade Commission interpretation. 514 U.S. at 296–298, 115 S.Ct. 1489.

5. Moreover, there is no indication that Oklahoma has been exempted from the Act. 15 U.S.C. § 1692o; 16 C.F.R. Part 901.

6. The 30–day notice provision here contained in the summons did not contain a time suspension notice of collection efforts in event of dispute inquiry as required under 15 U.S.C. § 1692g(b). See *Bartlett v. Heibl,* 128 F.3d 497 (7th Cir.1997). However, this defect has not been raised by the parties and is thereby waived.

covered by the FDCPA, but those whose practice is limited to legal activities are not covered. Similarly, filing or service of a complaint or other legal paper (or transmission of a notice that is a legal prerequisite to enforcement of a debt) is not a 'communication' covered by the FDCPA, but traditional collection efforts are covered.

. . . .

Section 803—Definitions

. . . .

2. Exclusions. The term [communication] does not include formal legal action (e.g., filing of a lawsuit or other petition/pleadings with a court; service of a complaint or other legal papers in connection with a lawsuit, or activities directly related to such service.)

. . . .

Section 809(a) requires a collector, within 5 days of the first communication, . . .

6. Legal Action. A debt collector's institution of formal legal action against a consumer (including the filing of a complaint or service of legal papers by an attorney in connection with a lawsuit to collect a debt) . . . is not a 'communication in connection with collection of any debt', and thus does not confer section 809 notice-and-validation rights on the consumer.

53 F.R. 50097, 50100, 50101, 50108.

¶ 15 The FTC Commentary also notes that an attorney may take legal action within the 30-day period after sending the notice. If the consumer disputes the debt's validity, the attorney, according to the Commentary, may still take legal action but must cease other collection efforts. 53 F.R. 50097, 50101.

¶ 16 It is to be noted and emphasized that reliance placed upon the nonbinding FTC Commentary in light of *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), is done so at the debt collector's peril. *Heintz* specifically rejected that part of the Commentary which read "Attorneys or law firms that engage in traditional debt collection activities . . . are covered by the FDCPA, but those whose practice is limited to legal activities are not covered." 514 U.S. at 298, 115 S.Ct. 1489. The Court also re-

jected arguments based upon statutory language and legislative history in reaching its conclusion that there are "strong reasons for believing the Act applies to the litigating activities of lawyers." 514 U.S. at 294–298, 115 S.Ct. 1489.

¶ 17 The *Heintz* Court held the Act governs attorneys engaging in debt collection activity *"even when that activity consists of litigation." Id.* The "activity" in *Heintz* consisted of a letter sent by the creditor's attorney after suit was filed. The letter was sent as a part of an effort to settle the suit but it allegedly contained false information about the debt.

¶ 18 The Act in 15 U.S.C. § 1692a(2) allows the broadest definition to the term "communication." This broad scope definition is not consistent with the FTC Commentary's exception for pleadings and process. However, pleading, process, and notice are part of lawyers' "litigating activities" and as the Supreme Court said, "for an ordinary court-related document does in fact, 'notify' its recipient that the creditor may "invoke" a judicial remedy." 514 U.S. at 296, 115 S.Ct. 1489.

¶ 19 Therefore, this Court reiterates its ruling here for clarification that a pleading or a summons is a "communication" under the Act.

## 2. *Conflict Between Act And Pleading Code*

¶ 20 The appealed questions arise because, here, the action's summons contained both the Act's required 30-day notification and the Pleading Code's admonition that a judgment could be rendered in 20 days if no answer was filed. Clearly, rendition of a judgment upon failure to answer within the stated 20-day period could foreclose any right to dispute the debt, much less to be afforded additional information in event the debtor disputes the debt's validity, or requests original creditor identity and thereby obtain additional time, and have collection activity cease pending the debt collector's supplying of that information. This then returns us to the initial question posed at the beginning of this section as to whether con-

flict exists between the Act and the Oklahoma Pleading Code. This Court holds that a conflict does exist, but for the reasons set out in section B1 herein, the conflict may be resolved.

■ ¶ 21 In cases involving first notification by means of some form of written communication *not* part of a judicial proceeding, the test for determination of existence of conflict is whether the content of the communication contradicts or overshadows the Act's notification requirements so that it would make the "least sophisticated consumer" uncertain as to his or her rights under the Act.[7] *Terran v. Kaplan,* 109 F.3d 1428 (9th Cir. 1997); *U.S. v. National Financial Services, Inc.,* 98 F.3d 131 (4th Cir.1996); *Russell v. Equifax A.R.S.,* 74 F.3d 30 (2nd Cir.1996). *See also Avila v. Rubin,* 84 F.3d 222 (7th Cir.1996), employing a lesser "unsophisticated consumer standard" that was defined to be low and close to the bottom of the sophistication meter.

■ ¶ 22 The phrase "contradicts or overshadows" has been viewed as two tests, one for information that is inconsistent with the Act's required notice and the other for a statement, although not clearly contradictory, which obscures the information required by the Act. *Bartlett v. Heibl,* 128 F.3d 497 (7th Cir.1997). Overshadowing might also occur because of the format of the information into small or a lighter shaded print. Another view is that the Act protects the unsophisticated consumer against confusion in whatever form it may take. *Id.*

■ ¶ 23 The debt collector's notice contradiction need not be threatening to be in violation of the Act. The notice overshadows or contradicts the mandatory notice if it makes the least unsophisticated consumer uncertain as to his or her rights.[8] *Russell v. Equifax A.R.S.,* 74 F.3d 30 (2nd Cir.1996). It does not satisfy the Act's requirements to supply the information when other informa-

tion contained in the notice is contradictory or submitted in a manner which may cause the consumer to disregard or overlook his or her rights. *Id.* at 35. Overshadowing and contradiction have been found to exist when the debt collector has given the debtor time limitations in which to pay that contradicted the required notice that the debtor had 30 days to dispute the debt or request its validation or which threatened ominous action. *Chauncey v. JDR Recovery Corporation,* 118 F.3d 516, 518–19 (7th Cir.1997); *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996); *Russell v. Equifax A.R.S.,* 74 F.3d 30 (2nd Cir. 1996); *Graziano v. Harrison,* 950 F.2d 107 (3rd Cir.1991).

■ ¶ 24 In this light, it is noted that debt collection letters using language that advised payment must be made within five or ten days, or which is threatening so as to cause the unsophisticated consumer to overlook or disregard his or her rights, or which shortened the 30 days provided in the Act, are examples of violations. *Graziano v. Harrison,* 950 F.2d 107 (3rd Cir.1991); *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086 (W.D.N.Y.1992); *Anthes v. Transworld Systems, Inc.,* 765 F.Supp. 162 (D.Del.1991).

■ ¶ 25 Therefore, *based solely on the summons' entire content,* the totality of the language contained here in Morgan's first notice to the debtor Mendus, while partly complying with the Code and containing some information on the Act, both conflicts with and overshadows the notice provisions of the Act. The fact that this initial communication comes in the context of litigation does not alter that conclusion. *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). In summary, the summons' Code admonition that a judgment will be taken in 20 days is, at best, confusing when accompanied by the Act's notification concerning rights of dispute and validation of the debt.

---

7. The term has been defined as the consumer of below-average sophistication or intelligence who may be especially vulnerable to fraudulent schemes. *Clomon v. Jackson,* 988 F.2d 1314, 1319–20 (2nd Cir.1993). "[T]he test is how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2nd Cir.1996).

8. This determination presents a question of law. *Terran v. Kaplan,* 109 F.3d at 1431–32.

An unsophisticated consumer presented with this form of first notice could be placed into a state of confusion unable to ascertain from the face of the document what his rights are. A consumer under these circumstances waits past the first 20 days at his or her peril.

¶ 26 Thus, this Court is required to hold, as indicated in the first paragraph of Section A hereof, that there is a conflict between the Act and the Oklahoma Pleading Code as presented in this set of facts.

## B. *Reconciliation of Act and Pleading Code*

### 1. *Pre-emption*

¶ 27 A crucial question which must here be resolved is whether the Act pre-empts the Pleading Code as a consequence of the conflict between the two statutes.

¶ 28 The Federal pre-emption doctrine stems from the Supremacy Clause of the United States Constitution and invalidates any state law which contradicts or interferes with an act of Congress. U.S. Const., art. 6, cl. 2; *Smith Cogeneration Mgt. v. Corporation Commission of Oklahoma,* 1993 OK 147, ¶ 21, 863 P.2d 1227, 1239. The scope of state law subject to pre-emption includes both the positive enactments of a state and its common law rules. *Attocknie v. Carpenter Mfg., Inc.,* 1995 OK CIV APP 54, ¶ 8, 901 P.2d 221, 224.

¶ 29 Congress may pre-empt state law in four specific instances:

(1) By so stating in express terms.

(2) By a scheme of federal regulation so persuasive as to make reasonable the inference that Congress left no room to supplement it.

(3) To the extent that state law actually conflicts with federal law, that is, those areas where compliance with both state and federal law is a physical impossibility.

(4) Where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Smith Cogeneration Mgt. v. Corporation Commission of Oklahoma,* 1993 OK 147,

¶ 21, 863 P.2d 1227, 1239; *Missouri–Kansas–Texas R. Co. v. State,* 1985 OK 108, ¶ 41, 712 P.2d 40, 46–7; *Attocknie v. Carpenter Mfg., Inc.,* 1995 OK CIV APP 54, ¶ 8, 901 P.2d 221, 224.

¶ 30 Here, the Act expressly addresses the matter. The Act provides:

This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, *except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.* For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

15 U.S.C. § 1692n (emphasis added).

¶ 31 The clear intent of the pre-emptive language limits the scope of pre-emption to areas of inconsistency and then only to the extent of that inconsistency. When Congress defines the reach of pre-emption then matters beyond that reach are not pre-empted. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992); *Goben v. Barry,* 237 Kan. 822, 703 P.2d 1378 (1985); *Attocknie v. Carpenter Mfg., Inc.,* 1995 OK CIV APP 54, ¶ 10, 901 P.2d 221, 225. For example, the Act specifies venue but not a statute of limitations for any legal action to collect a debt. 15 U.S.C. § 1692i(a).

¶ 32 This Court here holds that the 20–day provision of the Oklahoma Pleading Code is not pre-empted by the Act because the Code and the Act can be reconciled and made compatible. In other words, it is possible to have compliance with each law under the fact circumstances herein reviewed such that the 20–day provision will not stand as an obstacle to the accomplishment of the purposes of the Act where the debt collector follows the guidelines herein set for this type of action in conformity with *Bartlett.*[9]

9. It is again noted that the issue arises only when the petition and summons constitute the initial contact by the creditor with the consumer debtor.

## 2. *Reconciliation and Compliance*

■ ¶ 33 The Act does not prevent a creditor from bringing a lawsuit prior to the expiration of the 30–day notice period contained in Section 1692g. *Bartlett v. Heibl,* 128 F.3d 497, 501 (7th Cir.1997). Creditors and their counsel must be aware, however, that the Act does apply to litigation activities. *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). Therefore, the debt collector must cease the collection efforts upon receipt of a response under the Act from the consumer debtor disputing the debt's validity or requesting identification of the original debtor pending the debt collector's response under the Act. 15 U.S.C. § 1692g(b); *Bartlett v. Heibl,* 128 F.3d 497, 501 (7th Cir.1997).[10] Moreover, if the initial or first communication with the consumer-debtor takes the form of the summons, as here, then that communication must not, and may not, confuse, overshadow, or contradict the Act's requirements. Furthermore, when an unsophisticated creditor is presented with the problem of differing time limits distinct from those of the Act, then failure to explain the differences and distinctions could result in confusion and possible violation of the Act.

■ ¶ 34 The *Bartlett* Court's resolution of the problem of inconsistency provides a guideline here emulated for making the Act and Oklahoma's 20–day answer date of the Pleading Code compatible.[11] When, as here, the initial contact is by petition and summons, the Act's notification should also contain, similar to the recommendation in *Bartlett, additional* language which in substance states:

The law does not require me to wait until the end of the thirty-day period following

first contact with you before suing you to collect the debt. Even though the law provides that your answer to the petition is to be filed in this action within 20–days you may obtain an extension of that time. Furthermore, no request will be made to the Court for a judgment until the expiration of thirty days after your receipt of this petition and summons. However, if, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this petition and summons, the law requires me to cease my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you. You should consult an attorney for advice concerning your rights and obligations in this suit.

¶ 35 A postponement of a default judgment for an additional 10 days poses no undue hardship. For example, money judgments may not be enforced for a period of 10 days following entry.[12] 12 O.S.Supp.1998, § 990.3(A). From and after this opinion, if a debt collector proceeds to judgment by default prior to the expiration of 30 days from the debtor's receipt of the petition and summons, *when the summons and petition are the initial contact,* then it does so at the risk of suit by consumer debtors seeking redress under the Act. However, under the facts here presented, if the additional language set out above is contained in the summons, it would then appear, as stated by Judge Posner in *Bartlett,* that "safe haven" should be found at least in this Division of the Court of Civil Appeals.

---

10. *Compare Cavallaro v. The Law Office Of Shapiro & Kreisman,* 933 F.Supp. 1148, 1154 (E.D.N.Y.1996) where the demand letter statement that the debtor may be subject to legal proceedings "even while we respond to your dispute" was a violation of the Act.

11. Simply changing the time to 30 days to answer would not suffice because in the event of a consumer debtor response collection activities must cease pending a reply. However, nothing precludes changing the answer date to 30 days in addition to utilization of the explanatory language.

12. Additionally, when viewed in its entirety, the Oklahoma Code of Civil Procedure provides substantial protection to a defendant consumer debtor. For example, the answer date may easily be extended and without prejudice to any rights under the Act when, as was done here, the defendant enters an appearance. Also, as another example, the trial court retains full authority for 30 days after the judgment to set it aside. However, all of the Code's procedural protections are not sufficient to withstand scrutiny under the "least sophisticated consumer" standard or the "unsophisticated consumer" standard of the conflict presented here.

## IV. *Conclusion*

¶ 36 Under the scenario presented and reviewed, the bare presentment of the Act's 30–day notice provisions in the summons with its twenty days to answer is contradictory and constitutes overshadowing of the notice. In other words, it is confusing under the "least sophisticated consumer" standard or the "unsophisticated consumer" standard.

▮ ¶ 37 However, it is clear that this decision involves a significant issue of first impression. Whether a decision shall be given retroactive effect is one of judicial policy. *Cox v. Brockway, Inc.,* 1985 OK 80, ¶ 7, 708 P.2d 1085, 1088. The criteria involved in the application of that policy involve novelty of the ruling, the purpose of the ruling and whether its purpose will be furthered by retroactive application, and the possibilities of inequities. *Id.* Upon analysis of these criteria, this Court holds that this Decision shall apply to this case under review and shall be prospective. Therefore, this Decision applies prospectively only, that is, to this case, to cases now pending before judicial or administrative tribunals, which subsequently appear before this Division, or in the appellate litigation process before this Division, as well as to all controversies involving like facts occurring after this Opinion is promulgated.[13] *Globe Life & Accident Ins. Co. v. Oklahoma Tax Commission,* 1996 OK 39, ¶ 20, 913 P.2d 1322, 1329.

¶ 38 The Decision here reached in this Opinion requires that the trial court's decision be REVERSED AND REMANDED for further proceedings for the trial court to consider what statutory damages, if any and not to exceed $1,000.00, should be awarded and to proceed further on the claim of actual damages, if any. 15 U.S.C. § 1692k.

¶ 39 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT HEREWITH.

GOODMAN, P.J., and TAYLOR, J., concur.

---

**13.** These limitations are placed because, upon publication by this Court, this Decision has persuasive effect only. Okla.S.Ct.Rule 1–200(c), 12 O.S.Supp.1998, c. 15, app.