**Donn R. MCKNIGHT, Plaintiff,**

v.

**Leo BENITEZ and Benitez & Associates, Defendants.**

No. 8:01–CV–1140–T–30TGW.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 17, 2001.

Joseph W. Bonie, Law Office of Joseph W. Bonie, St. Petersburg, FL, for plaintiff.

Leonel R. Benitez, Leo Benitez, P.A., Coral Gables, FL, for defendants.

### ORDER ON DEFENDANTS'
### MOTION TO DISMISS

MOODY, District Judge.

This cause is before the Court upon Defendants' Motion to Dismiss (Dkt.# 6) and Plaintiff's response in opposition thereto (Dkt.# 8). Upon review of the motion, memoranda and supplemental filings by the parties, and the Court's own research, and for the reasons set forth below, the Court GRANTS in part and DENIES in part the Motion to Dismiss.

### Factual Background

This case concerns an attorney "debt collector" who allegedly violated the requirements of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA") because of the manner and place of filing suit for replevin and damages.

McKnight, a consumer within the meaning of the FDCPA, purchased a 1999 Chevrolet Suburban on December 1, 2000, and financed it through Ford Motor Credit Company (hereinafter "Ford"). Less than three months later, on February 23, 2001, Ford received notification from the Collier County Sheriff's Office that the vehicle had been seized on January 30, 2001, on Interstate 75 in Collier County, Florida, for allegedly being used in a drug transaction. The Sheriff was seeking forfeiture of the vehicle. Ford, through its attorney Leo Benitez of Benitez & Associates (hereinafter collectively "Benitez"), sought to protect its security interest by obtaining possession of the vehicle.

McKnight had missed his February payment and Ford alleged this default in its suit for replevin seeking possession, late charges, and pre-judgment interest. Benitez, as attorney for Ford, obtained a pre-judgment writ of possession, took possession of the vehicle from the Sheriff, and, on May 1, 2001, served the following package of documents upon McKnight:

1. Summons
2. Complaint consisting of:
 A. Jurisdictional allegations
 B. General allegations
 C. Count I—Replevin
 D. Notice Required by the FDCPA
 E. Copy of retail installment contract and certificate of title
 F. Affidavit of Vincent Lopez
 G. Order Granting Pre–Judgment Writ of Replevin
 H. Pre–Judgment Writ of Replevin

McKnight, through counsel, negotiated a settlement of that action with Benitez wherein McKnight satisfied his obligation with Ford and Ford delivered possession of the vehicle to McKnight. McKnight then brought this action for violations of the FDCPA alleging:

1. The summons and complaint package served upon him constitutes an "initial communication" which triggers the requirement for a Notice of Debt under § 1692g, and the notice which was included as a part of the complaint was overshadowed and contradicted by the language in the summons, "thereby rendering this notice ineffective in violation of 15 U.S.C. § 1692g(a)," and

2. The summons and complaint package was a "legal action" by a debt collector and was brought in an improper county in violation of § 1962i.

### Motion to Dismiss Standard

The appropriate standard for deciding to dismiss a complaint is whether it appears beyond a reasonable doubt that the Plaintiff can prove no set of facts to support his claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *South Florida Water Management Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996); *Marshall County Bd. of Educ. v. Marshall*

*County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993). The Court must view the complaint in the light most favorable to the Plaintiff and construe the allegations in the complaint as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County,* 992 F.2d at 1174 (11th Cir.1993); *Hunt v. American Bank & Trust Co.,* 783 F.2d 1011, 1013 (11th Cir.1986).

### Legal Discussion

### Count I—Notice of Debt Under the FDCPA

McKnight's first claim is that the Notice of Debt attached to the complaint was rendered ineffective because it was overshadowed and contradicted by the language in the summons in violation of 15 U.S.C. § 1692g(a). Of course, it does not matter if the Notice is ineffective unless the Act required it to be sent. 15 U.S.C. § 1692g(2) states:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Under the FDCPA, a debt collector's obligation to send a Notice of Debt is triggered by an "initial communication" with the consumer. The first question, then, is whether a complaint served upon a debtor is an "initial communication" within the meaning of the Act. There is no precedent binding on this Court which resolves this question so the Court begins by reviewing the Act itself.

The term "communication" is defined in the Act at 15 U.S.C. § 1692a(2) which states:

The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

Granted the definition of "communication" is broad (and probably intentionally so to keep debt collectors from circumventing it), but the purpose, wording, and structure of the Act point to the conclusion that Congress did not intend for a legal action to be a "communication."

The purpose of the Act, as stated in § 1692(e), is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." That language indicates that Congress intended to regulate unscrupulous practices of debt collectors and level the playing field for debt collectors who do not use abusive practices. There is no indication whatsoever that Congress considered state law legal remedies to be "abusive," nor does it appear necessary to alter the procedures for filing state lawsuits to level the playing field. After all, if state lawsuits are used in an abusive manner, protection already exists in the court where the action is brought.

Moreover, Congress did not overlook legal actions as being potentially abusive. It made a specific provision in the Act, in a section entitled "Legal Actions by Debt Collectors[1]," to regulate venue, the place where a lawsuit could be filed. Had it wished to alter the timing of the filing or create other changes in existing legal remedies to curb "abuses," it would have been logical to do so there. Or, specific mention of legal actions could have been made within the definition of "communication." The absence of doing so is one indication that Congress did not intend the revolutionary changes to long-standing judicial

remedies which are required if a legal action is considered a "communication" within the meaning of the Act.

■ Like this Court, the Federal Trade Communication does not view a formal legal action to be a "communication" in connection with the collection of a debt. Courts may look to relevant administrative publications and the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 41, et seq., for guidance. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir.1985). The Federal Trade Commission, in 1989, published a non-binding "Commentary" which states in part[2]:

1. Coverage (Sections 803 (2, 5, 6), 811) "Attorneys or law firms that engage in traditional debt collection activities ... are covered by the FDCPA, but those whose practice is limited to legal activities are not covered. Similarly, filing or service of a complaint or other legal paper (or transmission of a notice that is a legal prerequisite to enforcement of a debt) is not a 'communication' covered by the FDCPA, but traditional collection efforts are covered."
 \* \* \* \* \* \* \* \* \* \*

Section 803 Definitions
 \* \* \* \* \* \*

2. Exclusions. The term communication does not include formal legal action (e.g., filing of a lawsuit or other peti-

---

1. 15 U.S.C. § 1692i.

2. Portions of this language from the "Commentary" have been judicially rejected causing some courts to question whether the remaining language has any vitality. *See Mendus v. Morgan & Assoc.*, 994 P.2d 83 (Okla.Civ.App.1999). The first sentence in section 1 (that attorneys whose debt collection efforts are limited to litigation are not covered by the Act) was rejected by the U.S. Supreme Court in *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395

(1995). The parenthetical language of the second sentence in section 1 (that the Act does not apply to a notice that is a legal prerequisite to enforcement of a debt) was rejected by the Second Circuit in *Romea v. Heiberger & Associates*, 163 F.3d 111 (2nd Cir.1998) (3–day rent demand notice, required by New York law as condition precedent to summary eviction proceeding, was a "communication" to collect a debt within the meaning of the FDCPA.) The Court considers the remaining portion of the commentary persuasive.

tion/pleadings with a court; service of a complaint or other legal papers in connection with a lawsuit, or activities directly related to such service.)

\* \* \* \* \* \*

"Section 809(a) requires a collector, within 5 days of the first communication," . . .

\* \* \* \* \* \*

"6. Legal Action. A debt collector's institution of formal legal action against a consumer (including the filing of a complaint or service of legal papers by an attorney in connection with a lawsuit to collect a debt) . . . is not a 'communication in connection with collection of any debt', and thus does not confer section 809 notice-and-validation rights on the consumer." 53 F.R. 50097, 50100, 50101, 50108.

The FTC's "big picture" view is consistent with the Act's purpose—to curb abusive debt collection practices, not legal actions.

The opposing view, the one urged by Plaintiff, wreaks havoc on the practice of law and legal actions to collect debts. For example, when a legal action has been interpreted to be a "communication," the courts have found Notice of Debt forms to be ineffective both when attached to the complaint (*Martinez v. Law Offices of David J. Stern, P.A.*, 266 B.R. 523 (Bankr. S.D.Fla.2001)) or made a part of the summons (*Mendus v. Morgan & Assoc.*, 994 P.2d 83 (Okla.Ct.App.1999)). A notice sent separately from a complaint, either before or after service, would be fraught with the same perils.[3]

Not only does the interpretation that a legal action is not a "communication" comport with the purpose and structure of the Act, it is necessary to avoid serious constitutional questions. Courts are constrained to ascertain whether a construction of the Act is fairly possible by which constitutional infirmities are avoided. *Ullmann v. United States*, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). For example, when a legal action is considered a "communication," § 1692c(a)(2) prevents a creditor from serving a debtor with process when the creditor knows the debtor is represented by an attorney and the attorney reasonably responds to contacts, but refuses to allow direct communication with the debtor. Section 1692c(a)(2) provides:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer;

In that factual scenario and under that interpretation of a "communication," a creditor would be unable to perfect service

**3.** One of the potential reasons such problems are perpetuated is due to the lure of attorney's fees. Even in cases with nominal or no damages, technical violations give rise to full attorney's fees creating a well-spring of litigation to "vindicate" non-existent harms. *Graziano v. Harrison*, 950 F.2d 107 (3d Cir.1991)

(attorney's fees are mandated by the Act even where violations were so minimal that statutory damages were not warranted.) This Court finds that interpreting "communication" to include a legal action unnecessarily extends a legal trap for the unwary.

upon the debtor and, therefore, unable to obtain judgment. The constitutional problems are obvious. Surely Congress did not intend for the FDCPA to stymie the judicial remedies of the fifty states. To the contrary, the FDCPA's apparent objective was to preserve creditors' judicial remedies. *See Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

In *Heintz,* the issue was whether an attorney who only litigated to collect debts was a "debt collector" within the meaning of the Act. The Supreme Court held in the affirmative. One of Heintz's arguments was that a lawsuit should not be considered a "communication" because that interpretation would allow a debtor to stop lawsuits altogether under § 1692c(c). Section 1692c(c) requires a "debt collector" not to "communicate further" with a consumer who "notifies" the "debt collector" that he or she "refuses to pay" or wishes the debt collector to "cease further communication." The Supreme Court, at p. 1491, phrased the issue thusly:

> In light of this provision, asks Heintz, how can an attorney file a lawsuit against (and thereby communicate with) a non-consenting consumer or file a motion for summary judgment against that consumer?

The Supreme Court found it unnecessary to reach this issue since it determined a lawsuit could fit within an exception to § 1692c(c). It said at p. 1491:

> We agree with Heintz that it would be odd if the Act empowered a debt-owing consumer to stop the "communications" inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt. But, it is not necessary to read § 1692c(c) in that way—if only because that provision has exceptions that permit communications to notify the consumer that the debt collector or creditor may invoke or "in-

tends to invoke" a "specified remedy" (of a kind "ordinarily invoked by [the] debt collector or creditor"). §§ 1692c(c)(2), (3). Courts can read these exceptions, plausibly, to imply that they authorize the actual invocation of the remedy that the collector "intends to invoke." The language permits such a reading, for an ordinary court-related document does, in fact, "notify" its recipient that the creditor may "invoke" a judicial remedy. Moreover, the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies.

Heintz' rhetorical question also applies to § 1692c(a)(2), but, unlike § 1692c(c), there is no exception available. For § 1692c(a)(2), the only means of avoiding serious constitutional infirmities are through the interpretation that a legal action is not a "communication," or by an unreasonable construction.

To avoid a clever debtor's scheme to stop a lawsuit altogether, perhaps a court could construe § 1692c(a)(2) to provide that a "debt collector" could obtain the "express permission of a court of competent jurisdiction" to serve the lawsuit. But, this construction is unreasonable because it envisions having a hearing without notice to the debtor (for if a lawsuit is a "communication," then a notice about the hearing likewise would be a "communication"), which is not authorized under the Act. Additionally, it contemplates a substantial change in the process of filing suit on a debt, a change occasioned by silence rather than by an affirmative requirement of the Act. Another possible, but unreasonable, construction might be that an attorney's refusal to accept service would be a failure "to respond within a reasonable period of time to a communication." This would necessitate a holding that a letter or telephone call from the debtor's attorney, while a "communication," is not a "re-

sponse." That cannot be a fair reading of the Act.

This Court acknowledges that two courts have taken the position urged by Plaintiff that a legal action is a "communication." Only one has directly discussed this issue. *See Mendus v. Morgan and Assoc.*, 994 P.2d 83 (Okla.Civ.App.1999). There, the Oklahoma Court of Appeals held that a lawsuit fit within the definition of the term "communication." The court found there was a conflict between the twenty day period stated in the summons and the thirty day notification period required by the Act which had been included as a part of the FDCPA Notice language added to the summons. This interpretation created an inherent conflict with the Oklahoma Pleading Code.

The *Mendus* Court found the twenty day response period of the Oklahoma Pleading Code to be in direct conflict with the FDCPA. To avoid preemption of the Pleading Code, the Oklahoma Court of Appeals resolved the conflict by suggesting specific language that plaintiffs could include in the summons that would explain the difference in the two time periods, thereby saving the Pleading Code from being preempted by the Act as to all lawsuits founded upon a debt. Absent this language, lawyers proceed at their peril. The Oklahoma court viewed this as a judicially created "safe haven" similar to the "safe haven" approach fashioned by the Seventh Circuit in *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir.1997). Apparently to avoid a flood of lawsuits, this holding was given prospective application only. This conflict could also have been avoided by interpreting "communication" to not include a legal action.

A bankruptcy court has likewise held that a summons and complaint package was an "initial communication" under the Act. *See Martinez v. Law Offices of David J. Stern, P.A.*, 266 B.R. 523 (Bankr. S.D.Fla.2001). *Martinez* contains a lengthy analysis determining that the Notice on page eight of a sixteen page complaint packet was ineffective for being overshadowed by the recitation of the consequences of not responding to the complaint found in bold print in the summons on the first page. There is no discussion about why a legal action should be considered a "communication."

 This Court respectfully disagrees with the view of the Oklahoma Court of Appeal and the Bankruptcy Court in the Southern District of Florida, and concludes that, because it is more consistent with the purpose and intent of Congress and because it is compelled to do so to avoid serious constitutional questions, the term "communication" as used in the Act does not include a "legal action" or pleadings or orders connected therewith. Therefore, as to Plaintiff's first claim, since all of the documents served upon McKnight are either pleadings or orders, the notice attached to the Complaint was not required. Hence, whether or not it was effective was of no consequence. Plaintiff's claim in this regard is hereby dismissed.

### Count II—Venue Under FDCPA

Plaintiff's second claim is that the service of the summons and Complaint was "a legal action by a debt collector against a consumer" which was brought in the wrong venue in violation of 15 U.S.C. § 1692i(2). This section reads in pertinent part,

(a) Venue

Any debt collector who brings any legal action on a debt against any consumer shall—

(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—

(A) in which such consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

In the Complaint, Plaintiff alleges that he is a resident of Pinellas County and signed the financing contract there. If this is true, the venue required by the FDCPA is Pinellas County. Defendant argues that this provision should not apply to him since its action was brought in Collier County where the vehicle was located as allowed under Florida's replevin statute, and the action was for replevin only, not an action on a debt. Because the Court determines that Plaintiff has stated a cause of action for a violation of the FDCPA, the FDCPA venue provision preempts state law venue provisions. *Martinez v. Albuquerque Collection Services, Inc.*, 867 F.Supp. 1495 (D.N.M.1994).

Had Defendant brought the claim for possession in the forfeiture action filed by the Sheriff of Collier County, it would not have been in violation of the FDCPA because it merely would have been protecting the right to possession as against the Sheriff. Even in a separate replevin action, since the Sheriff held possession of the vehicle, the creditor could have brought the action for possession in Collier County against the Sheriff only. But, since the replevin action here sought damages against McKnight under the financing agreement (albeit very limited damages of late charges and pre-judgment interest), it constituted an action on the debt which was required to be in conformance with the FDCPA.

It is interesting to note that the attorney here may be punished for an act that is neither abusive nor unscrupulous. The Sheriff held possession of the vehicle and sought its forfeiture in Collier County because he contended it had been used there in a drug transaction. McKnight, the debtor, would have had to go to Collier Country to defend his right to the vehicle against the Sheriff had not Ford done it for him. Ford could have accomplished the same result without involving the proscriptions of the FDCPA, but, unfortunately in retrospect, chose to do it in the only way (out of three choices) that invoked the provisions of the FDCPA, by filing a separate proceeding in the wrong (under the terms of the FDCPA) county seeking damages under the financing agreement.

Additionally, if Plaintiff were truly concerned about venue, his only real damage would have been the extra time spent by his attorney to file a motion for change of venue (and then, only if Benitez would not have agreed to change venue voluntarily after having the relevant portion of the FDCPA brought to his attention in a telephone call)[4].

Therefore, as to Plaintiff's second claim, the complaint alleges facts sufficient to state a cause of action for a violation of the FDCPA for filing suit in an impermissible venue. Defendants' Motion to Dismiss in this regard is denied.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (Dkt.# 6) is GRANTED in part and DENIED in part as set forth herein. Plaintiff's claim that the service of the lawsuit was a communication that overshadowed the notification provisions is DISMISSED with prejudice, but Defendant's Motion is DENIED as to Plaintiff's second claim that the replevin action was filed in a prohibited venue. Defendants

---

4. It is Plaintiff's duty to mitigate his damages, and this duty may have some bearing on attorney's fees as well, but that is left for another day. Mitigation of damages is an issue appropriate to an affirmative defense rather than a motion to dismiss.

shall have ten (10) days from the date of this Order within which to respond to the portion of Plaintiff's Complaint surviving this Order.