# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-1113

FRANK THOMAS,

*Plaintiff-Appellant,*

v.

LAW FIRM OF SIMPSON & CYBAK, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00-CV8-211—**David H. Coar**, *Judge.*

———————

ARGUED SEPTEMBER 22, 2003—DECIDED JANUARY 13, 2004

———————

Before ROVNER, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Frank Thomas appeals from the district court's dismissal of his suit which alleged that General Motors Acceptance Corporation ("GMAC"), the law firm Simpson & Cybak ("Simpson"), and their employees failed to send him a debt validation notice advising him of his rights as a debtor within five days of their initial communication with him, as is required by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692-1692o. Two principal questions are raised in this appeal: whether a creditor's letter to a debtor or a debt collector's initiation of a lawsuit in state court constitute "initial communications" within the meaning of the FDCPA. In dismissing Thomas's case for failure to state a claim, the district court

determined that the creditor's letter to the debtor constituted an "initial communication," while the debt collector's initiation of the lawsuit did not. We disagree with both conclusions. Accordingly, we reverse the district court's decision to dismiss Thomas's claim against Simpson, and we remand for further proceedings.

## I. BACKGROUND

In January 1998, Frank Thomas purchased a Chevrolet Blazer from Apple Chevrolet under an installment contract immediately assigned to GMAC. Around January 20, 2000, shortly after Thomas lost his job with GMAC, he received a default letter from GMAC operations manager Kay Candiano on GMAC letterhead informing him that his payment on the vehicle was past due.

On March 27, 2000, GMAC, through its attorneys, Simpson & Cybak, sued Thomas in Illinois state court to recover the vehicle. Kathleen Haggerty, a Simpson lawyer, signed the complaint. The complaint included a statement that, "[p]ursuant to the [FDCPA], you are advised that this law firm is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose." The summons included similar language.

Thomas filed suit against GMAC and Simpson under the FDCPA, claiming that neither party sent him a debt validation notice advising him of his rights as a debtor. *See* 15 U.S.C. § 1692g(a). The district court granted both defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thomas now appeals.

## II. ANALYSIS

We review de novo the district court's dismissal of Thomas's complaint for failure to state a claim, accepting as

true the well-pleaded allegations in Thomas's complaint and drawing all reasonable inferences in his favor. *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).

The FDCPA requires that "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector" must send the debtor a written validation notice containing certain information. 15 U.S.C. § 1692g(a). The notice must inform the debtor of the amount of the debt, the name of the creditor, and that the debt will be assumed valid if the debtor does not dispute its validity within 30 days of the receipt of the notice. *Id.* § 1692g(a)(1)-(3). Furthermore, the notice must include a statement that, if the debtor disputes the debt within 30 days of the notice, the debt collector will obtain and send the debtor verification of the debt and, upon written request, send the debtor the name and address of the current creditor, if different from the original creditor. *Id.* § 1692g(a)(4)-(5).

Thomas argues that neither GMAC nor Simpson notified him of these debt validation rights. Thomas primarily contends that the summons and complaint Simpson filed initiating state court litigation against him constituted an "initial communication" under the FDCPA, and Simpson was therefore required to notify him of his validation rights within five days of that communication.

As an initial matter, we need to decide whether GMAC's January 20, 2000 default letter to Thomas constitutes an "initial communication" for purposes of the FDCPA. Despite the district court's finding to the contrary, all parties to this appeal now concede that the letter does not constitute an "initial communication" regarding a debt under the FDCPA.

The FDCPA defines a "communication" broadly: "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

But, because the Act regulates debt collectors rather than creditors, *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), GMAC's letter to Thomas—a letter from a creditor[1]—does not qualify as an "initial communication" under the Act. Because the FDCPA makes debt collectors, but not creditors, responsible for notifying debtors of their validation rights, *see* 15 U.S.C. § 1692g(a), a contrary position could create significant unintended obligations for debt collectors. Debt collectors would be responsible for notifying debtors of their debt validation rights within five days of an "initial communication" that the debt collector did not send or for one communicated before the creditor retained the debt collector. Nothing in the FDCPA suggests that Congress intended creditors' unilateral actions to obligate debt collectors to inform debtors of their rights; rather, the Act is intended to deter debt collectors from employing their own abusive tactics. Because we decide that GMAC's letter to Thomas does not constitute an initial communication for FDCPA purposes, no obligation to inform Thomas of his validation rights arose upon the sending of the letter.

The principal question remains, whether Simpson's filing of the summons and complaint, in state court, was an "initial communication" within the meaning of the FDCPA, such that the filing triggered an obligation to notify Thomas of his validation rights within five days. No appellate court

---

[1] The district court found that GMAC was a creditor. *Thomas v. Law Firm of Simpson & Cybak*, No. 00 C 8211, 2001 WL 1516746, at*3 (N.D. Ill. 2003). A creditor includes "any person who offers or extends credit creating a debt or to whom a debt is owed. . .," whereas a debt collector includes "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(3) & (6).

has addressed this issue, and district courts are divided in their analyses. *See, e.g.*, *McKnight v. Benitez*, 176 F. Supp. 2d 1301, 1306-08 (M.D. Fla. 2001) (holding that a summons and complaint do not constitute "initial communications" triggering the debt validation notice requirements of § 1692g); *but see, e.g.*, *Sprouse v. City Credit Co.*, 126 F. Supp. 2d 1083, 1089 n.8 (S.D. Ohio 2000) (finding that a summons and complaint served in a state court action constitute "initial communications" under the FDCPA).

By its terms, as stated above, the FDCPA's broad definition of a "communication" encompasses the filing of a summons and complaint. When Simpson filed the summons and complaint, it conveyed information regarding Thomas's debt.[2] The plain language of a statute "should be conclusive except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Castellon-Contreras v. INS*, 45 F.3d 149, 153 (7th Cir. 1995) (quoting *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242 (1989)). This is not such a case; rather, viewing the filing of a summons and a complaint as an "initial communication" is consistent with the drafter's intent.

The statute was intended to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices. . . ." S. Rep. No. 95-382, at 1 (1977). Our interpre-

---

[2] We are aware that Congress has proposed a bill amending the FDCPA to specifically exclude formal pleadings from the definition of a communication for purposes of 15 U.S.C. § 1692g, *see* H.R. 3066, 108th Cong. (2003), but as an interpretative body, we must interpret the law as it existed at the time the dispute arose. Nonetheless, the proposed amendment may be viewed as an indication that Congress considered the FDCPA's current definition of "communication" to include the filing of a summons and complaint.

tation of the statute furthers this objective because it helps ensure that debtors will be informed about their validation rights and that debt collectors will investigate claims before initiating litigation to collect debts. Defendants' argument that state courts offer sufficient protections to guard against abusive debt collection tactics during litigation is unpersuasive. The FDCPA affords different protections than state court; debt collectors who violate its provisions may be subject to civil liability. *See* 15 U.S.C. § 1692k.

Defendants contend that we should ignore the FDCPA's plain language because deeming the filing of a summons and complaint an "initial communication" would interfere with litigation by making debt collection lawsuits more cumbersome for attorneys. In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court considered and, in light of the FDCPA's plain language, rejected similar arguments. The Court held that the FDCPA applies to lawyers who regularly try to collect debts through litigation. *Heintz*, 514 U.S. at 292. Although the Court did not specifically consider whether initiating a lawsuit fell within the definition of a "communication," its opinion suggests that concerns about interfering with litigation are not sufficient to warrant ignoring the statute's plain language. Defendants' argument is further belied by the fact that the FDCPA does not require debt collectors to notify debtors of their rights in those communications. Instead, debt collectors have the option of notifying debtors within five days of the initial communication. 15 U.S.C. § 1692g(a).

Because we have concluded that the filing of a summons and complaint by a debt collector constitutes an "initial communication" under the FDCPA, Thomas has stated a viable claim for violation of 15 U.S.C § 1692g.

### III.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's dismissal under Rule 12(b)(6) of Thomas's claim against Simpson and REMAND for further proceedings consistent with this opinion.

EVANS, *Circuit Judge*, dissenting.  I agree that the FDCPA's definition of "communication" *could* be read to encompass the filing of a summons and complaint by a lawyer. But I don't think it *should* be read that way. To do so, I submit, leads to a result that is not consistent with the purpose of the FDCPA, nor with the traditional view of what lawyers must do when they take a pivotal step in that relationship—instituting formal legal proceedings in a court of law to collect a debt.

No doubt, lawyers can be "debt collectors" when they act like them—by engaging in the kind of "unfair, harassing and deceptive debt collection practices" that the FDCPA is designed to protect against. *See Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) (lawyer sending out dunning letters is a debt collector subject to the FDCPA). But in this case, the lawyers were not sending dunning "communications" to Mr. Thomas. Instead, they were doing what lawyers traditionally do—filing a lawsuit in state court on behalf of their client. To hold that they must include in their court pleadings all the notice/validation, etc. information required by the FDCPA seems very odd indeed.

As a general rule, when statutory language is plain, there is no cause to examine other indicia of legislative intent. *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 835 F.2d 1207 (7th Cir. 1987). But we have long recognized that a section of a statute should not be read in isolation from the context of the statute as a whole. *See Nupulse, Inc. v. Schlueter*, 853 F.2d 545 (7th Cir. 1988). We also have noted that "the Supreme Court has recognized limitations on the requirement that statutory language be interpreted literally. A literal construction is inappropriate if it would lead to absurd results or would thwart the obvious purposes of the statute." *Smith v. Bowen*, 815 F.2d 1152, 1154 (7th Cir. 1987) (citing *In re Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643 (1978)).

To include the filing of a summons and complaint in the definition of a "communication" with a debtor under the FDCPA runs counter to the intent of the statute and creates inconsistency, as Judge Moody, in *McKnight v. Benitez*, 176 F. Supp. 2d 1301 (M.D. Fla. 2001), astutely observed:

> The purpose of the Act, as stated in § 1692(e), is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." That language indicates that Congress intended to regulate unscrupulous practices of debt collectors and level the playing field for debt collectors who do not use abusive practices. There is no indication whatsoever that Congress considered state law legal remedies to be "abusive," nor does it appear necessary to alter the procedures for filing state lawsuits to level the playing field. After all, if state lawsuits are used in an abusive manner, protection already exists in the court where the action is brought.

> Moreover, Congress did not overlook legal actions as being potentially abusive. It made a specific provision in the Act, in a section entitled "Legal Actions by Debt Collectors," to regulate venue, the place where a lawsuit could be filed. Had it wished to alter the timing of the filing or create other changes in existing legal remedies to curb "abuses," it would have been logical to do so there. Or, specific mention of legal actions could have been made within the definition of "communication." The absence of doing so is one indication that Congress did not intend the revolutionary changes to long-standing judicial remedies which are required if a legal action is considered a "communication" within the meaning of the Act.

176 F. Supp. 2d at 1304.

The majority notes, in a footnote, that a bill is pending in Congress to amend the FDCPA to specifically exclude formal pleadings from the definition of a communication under 15 U.S.C. § 1692g, *see* H.R. 3066, 108th Cong. (2003). The majority sees this as "an indication that Congress considered the FDCPA's current definition of 'communication' to include the filing of a summons and complaint." I think it's more likely that the purpose of the proposed amendment is to make explicit what is clearly implicit. The proposed amendment is, I submit, more easily viewed as an effort to curtail erroneous interpretations of what is included in the word "communication" under the FDCPA.

For these and other reasons quite well stated in *McKnight*, I respectfully dissent.

A true Copy:

     Teste:

                    _____

                    *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*